RUBBER & CELLULOID HARNESS TRIMMING CO. *v.* INDIA RUBBER COMB CO., (two cases.)

*Circuit Court, S. D. New York.* May 22, 1888.

PATENTS FOR INVENTIONS—PATENTABILITY—NOVELTY.
 In view of the English patent to Poole, in 1852, and the American patent to Dunham, in 1866, for covering metal harness trimmings with vulcanized rubber; of the English patent of 1841, to Harris, for dies for compressing and finishing plastic material; of that of 1857, to Green, for stamping the article pressed in imitation of leather stitching; of that of 1852, to Poole, for pressing harness trimmings of vulcanized rubber under heat; of that of 1842, to Deakin, for pressing other plastic material for the same purpose; and of the

United States patent of 1863, to Welling, for compressing plastic material on a metal core for harness trimmings,—there is no novelty in the device covered by reissued letters patent Nos. 5,155 and 5,156, of November 26, 1872, (original No. 123,603, of February 13, 1872,) to Andrew Albright, for an improvement in rubber-coated harness trimmings, by the use of a pair of dies for pressing, polishing, and trimming the edges of the rubber coating, so as to imitate stitching.

In Equity.  Bill for infringement.
*J. C. Clayton,* for complainant.
*Edwin H. Brown,* for respondent.

WALLACE, J.    The two suits pending between the parties, which have been heard together, are brought to restrain infringement of reissued letters patent granted to Andrew Albright—No. 5,155, dated November 26, 1872, and No 5,156, dated the same day—for "improvement in the manufacture of rubber-coated harness trimmings." These patents are a reissue in two divisions of the original letters patent to Albright, No. 123,603, dated February 13, 1872. The original patent describes the invention to consist "in making a pair of dies for pressing, polishing, and trimming the edges of the rubber coating of harness trimmings, so as to imitate stitching, and finish each article without hand labor." The dies are described as follows:

"The dies are beveled off at *a* and *c,* so as to form sharp edges. These edges cut off the waste on the other side. *e* shows the indentations which produce an imitation of stitches. The dies touch each other at *x, y, z,* so that they cannot crush the article placed in them."

The method of using the dies is stated to consist in placing the article to be coated in one of the dies, and pressing the other die down upon it, after the die or the article itself has been moderately heated, so that the pressure will finish the article. The drawings show dies with recesses adapted to form a rib, and the indentation, *e,* located in such recesses. The claim was as follows: "The construction and operation of the dies, A and B, with cutting edges, *a* and *c,* substantially as described, for finishing rubber-coated harness mountings." Reissue No. 5,155 describes the invention to consist "in making and using a pair of dies for pressing, finishing, polishing, and trimming the edges of the vulcanized coating of harness trimmings, such as rings, buckles, terrets, hooks, and like articles." The dies are described as provided with cutting edges for trimming off the superfluous coating, and the drawing is referred to as showing in the dies the indentations which produce an imitation of "stitching or other ornamentation." The specification contains this statement of new matter: "The form of the dies will vary with the form of the article to be pressed on them." The claim is as follows: "The dies, A and B, substantially as described." Reissue No. 5,156 describes the invention to consist of "an improved process for manufacturing rubber-coated harness trimmings." The process, as described in this patent, includes applying the gum coating to the metal, the vulcanization of the coating, and the compressing and finishing of the coating by the use of the dies described in reissue No. 5,155. The claim is as follows: "The

herein-described combined process of manufacturing metallic harness trimmings covered with rubber, gutta-percha, or other known vulcanizable gums."

The defendants insist that the patents are void for want of novelty of the invention claimed, and because the reissues are not for the same invention described in the original patent. These defenses, so far as they relate to reissue No. 5,155, were considered in a suit determined by the circuit court for the district of New Jersey in 1877, in which the proofs respecting the prior state of the art were substantially the same as in the present record; and the patent was sustained. Ordinarily it would be the duty of this court to follow and adopt the adjudication of another court of co-ordinate jurisdiction in a suit upon the same patent depending on the same evidence; but since the time when the former suit was decided the line of demarkation in patentable novelty between mere mechanical skill and the exercise of invention in the adaptation of old instrumentalities to a new use has been more strictly defined, and stricter rules of interpretation and construction are now applied to the claims of patents by the court of last resort. In the light of the more recent decisions of the supreme court, it seems that the patents must be held to be void for want of novelty. The evidence respecting the prior state of the art demonstrates that the compressing and finishing of the metal-coated articles by the use of the dies, instead of by hand, was the new thing, and the only new thing, originated by the patentee in the manufacture of harness trimmings. It was old to cover metal articles with a coating of vulcanized rubber by applying heat and pressure; and old to cover metal articles of harness trimmings with vulcanized rubber. This appears by the English patent to Poole, of 1852, and by the United States patent to Dunham, of 1866. Dies, formed with recesses of every conceivable shape, and having walls to cut off the surplus material, were a well-known instrumentality for compressing, densifying, giving form to, and polishing plastic material. Dies having recesses to receive the overflow or waste material, and cut to ornament the article pressed, had been shown by the English patent of 1841 to Harris; and cut to stamp the article pressed in imitation of leather stitching had been shown in the English patent of 1857 to Green. It was old to use dies in making articles of harness trimmings, such as rings, when made of vulcanized rubber, by moulding the article to nearly the desired form and compressing it under heat to give it excellent finish. This is shown by another English patent, of 1852, to Poole. It was old to use dies to compress and finish other plastic material,—such as horn suitably softened,—into loops, hooks, and other articles of harness trimmings, as is shown by the English patent to Deakin, of 1842; and to use them in making articles of harness trimmings, in order to compress plastic material upon metal cores, as is shown in the United States patent of 1863, to Welling, for a material made of a metal ring enveloped with factitious ivory. From this exhibit it is obvious that no inventive faculty was involved in the conception that dies could be efficiently employed to mould, compress, and finish vulcanized gums into articles of harness trimmings, or that

dies could be constructed with recesses adapted to give such articles any desired form, and successfully used. But the patentee was the first to use dies for pressing and finishing such articles in which the vulcanized coating was compacted upon metallic cores. The novelty consisted in applying the old instrumentality to this new use.

It is to be observed that the original patent described dies having special characteristics. They were not only to have cutting edges, but they were to be adapted to form a rib upon the article to be coated, and impress imitation stitching upon the rib. The drawings show recesses and indentations cut to form such a rib and stitching, and the reference to the letters of the drawing in the claim incorporate this characteristic of the dies into the claim. But in the reissues the form of the dies is no longer essential; they are to be of any varying form desired. As of necessity the form must vary with the form of the articles to be made, the interpolation has no significance unless it is intended to enlarge the claim of the reissue so that dies formed to create a rib, or a rib with imitation stitching, are no longer necessarily the dies of the patent. It is in evidence that before the introduction of the treatment by dies the articles of rubber-coated harness trimmings were made by covering the metal core or skeleton with soft rubber by hand, vulcanizing the rubber, and then turning, polishing, and finishing the article by hand; and it is not open to doubt that by using the dies such articles can be finished more quickly and economically, and can possibly be given more perfect finish, than by hand. Nevertheless, after it was known, or should have been known, that such dies could be used to compress and finish articles made of vulcanizable gum, as shown in the patent to Poole, and could be used to compress and finish plastic material surrounding a metal core or skeleton in making articles of harness trimmings, as shown in the patent to Welling, it would seem that nothing more was necessary to suggest the use of them to compress and finish similar articles in which the vulcanizable gum was to envelop a metal core. The dies do the same work, whether they are used upon an object wholly composed of vulcanized rubber or upon the vulcanized coating of an iron core. In both instances their pressure is exerted upon a plastic material to give solidity and final shape and finish to the article. It is absurd to suggest that there was anything peculiar in the properties of the material to start a doubt whether it could be compressed by dies about a metal core. The bill is dismissed.